# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JOE BALTAS,<br>        *Plaintiff*,<br><br>        v.<br><br>SHANNON BOWERS, et al.,<br>        *Defendants*. | No. 3:23-cv-0764 (VAB) |

## INITIAL REVIEW ORDER

Joe Baltas ("Plaintiff"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. § 1983. Mr. Baltas names fifteen defendants in their individual capacities only, Lieutenant Shannon Bowers, Warden Robert Martin, Officer Francis, Officer John Doe 1, Officer John Doe 2, Officer John Doe 3, Officer John Doe 4, Officer John Doe 5, RN Dave, LPN Jerikah, Lieutenant Nicholas Briatico, Deputy Warden Damien Doran, Warden Daniel Dougherty, APRN Sara Schauer, and Dr. Francisco Lupis.  He seeks damages on several claims for violation of his constitutional rights.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A. Based on this initial review,

the Court orders as follows:

All conspiracy claims, all claims for violation of 18 U.S.C. §§ 241, 242, 271, 371, and 1519; all claims under 42 U.S.C. §§ 1981, 1985, 1986, and 1988; all federal claims for spoliation or destruction of evidence and violation of the federal FOIA; and the state law claims for violation of the Connecticut FOIA and intentional spoliation of evidence are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Court declines to exercise supplemental jurisdiction over Mr. Baltas' claims for violation of Article first, sections 1, 4, 7, 8, 9, 10, 14, and 20 of the Connecticut Constitution, and his state law claims for violation of Conn. Gen. Stat. § 18-96b(g).

The case will proceed on the First Amendment retaliation claim against Defendants Bowers and Francis, the Eighth Amendment claim for use of excessive force against Defendants Bowers and Officer Does 1-5, the Eighth Amendment claim for deliberate indifference to medical and mental health needs against Defendants Bowers, Martin, Briatico, Dave, Jerikah, Doran, Dougherty, Schauer, and Lupis, and the state law claims for assault and battery against Defendants Bowers and Officer Does 1-5.

Mr. Baltas' motions seeking prejudgment remedy [**ECF Nos. 4, 5**] and limited early discover [**ECF No. 11**] are **DENIED**.

## I.   <u>BACKGROUND</u>

For purposes of initial review, the Court considers all of the following allegations to be true. While the Court does not set forth all of the facts alleged in Mr. Baltas' Complaint (ECF No. 1), it summarizes his basic factual allegations here to give context to its ruling below.

On October 5, 2022, Mr. Baltas allegedly requested that that documents, video footage, and other records be preserved for his use in another case, but later allegedly discovered that they

had not been preserved and instead were destroyed. Lieutenant Bowers allegedly was the FOI

Liaison at Corrigan Correctional Institution ("Corrigan") when Mr. Baltas submitted the requests

for preservation. In that capacity, she allegedly was responsible for preserving the materials,

providing them to Mr. Baltas, and maintaining a record of the requests and materials. Lieutenant

Bowers allegedly received Mr. Baltas' various requests and issued receipts or responded to the

requests, but allegedly did not preserve the requested video footage and permitted other

documents to be destroyed. *Id.* ¶¶ 31-36, 64. When confronted on the issue, Lieutenant Bowers

allegedly said she did not preserve the evidence because she was "not about to let [Mr. Baltas]

jam up staff." *Id.* ¶ 70.

On September 26, 2022,[1] Mr. Baltas allegedly was removed from Special Needs Status at

Walker Correctional Institution, where he had been held in solitary confinement, and transferred

back to Corrigan. He allegedly was classified as Single Cell Status Level 4 General Population.

*Id.* ¶¶ 41-42. On October 2, 2022, Mr. Baltas allegedly was assigned to cell 122 in F-Unit, a

handicap cell on the bottom tier of the unit in an area where inmates congregate during

recreation.  *Id.* ¶ 43. Mr. Baltas allegedly has been diagnosed with antisocial personality

disorder, borderline personality disorder, general anxiety disorder, panic disorder, cognitive

disorder, dysthymic disorder, major depressive disorder, and post-traumatic stress disorder. He

allegedly has hypersensitivity to loud noises and social interactions and suffers severe anxiety,

panic attacks, aggressive behavior, suicidal and homicidal ideations, and a complete lack of

impulse control when subjected to these conditions. *Id.* ¶ 44.

Lieutenant Bower allegedly was the unit manager of F-Unit. *Id.* ¶ 45. Mr. Baltas

allegedly discovered that the electrical and cable outlets in his cell did not work and that inmates

---

[1] Mr. Baltas reports this date as September 26, 2023. As he filed this action on June 13, 2023, the Court assumes that this date, and several subsequent dates in October and November should be in 2022, not 2023.

congregated outside his cell and engaged in loud and chaotic behavior. The cell allegedly was also near the shower so all inmates in the unit passed his cell daily. As Mr. Baltas allegedly had not been exposed to other inmates for four years, he allegedly began to experience severe anxiety and panic attacks and was in a constant manic state. *Id.* ¶¶ 46-47.

On October 2, 2022, Mr. Baltas allegedly met with Lieutenant Bowers and complained about the conditions in his cell and the location of the cell. He also allegedly stated that he was not handicapped and should not be housed in a handicap cell. Mr. Baltas allegedly stated that his mental illness and impulses were urging him to remove the assistive bars in the cell and use them as weapons. He also allegedly told her the presence of inmates outside his cell was triggering his mental illnesses and would cause negative behavior. *Id.* ¶ 48. Mr. Baltas allegedly asked to be moved to a cell in an area with less activity, preferably on the top tier. Although Lieutenant Bowers allegedly said she would move him in a few days, she allegedly never intended to do so. *Id.* ¶¶ 49-50. Mr. Baltas allegedly experienced constant severe anxiety and panic attacks, suicidal and homicidal ideations, and was unable to sleep for more than two hours per night. *Id.* ¶ 53.

Mr. Baltas also allegedly complained that he had not been evaluated by mental health staff, as was required under prison directives. Nor did Lieutenant Bowers refer Mr. Baltas to mental health to address his suicidal and homicidal ideations. *Id.* ¶ 55.

On October 4, 2022, Mr. Baltas allegedly informed Warden Martin of his concerns about his property, the conditions of his cell, and the lack of mental health treatment. He allegedly told Warden Martin that he did not think he could suppress his urges to use the bars in the cell as weapons for much longer. Mr. Baltas also allegedly asked Warden Martin to put him on "feed back" status so he could eat alone in his cell. Warden Martin allegedly said he would discuss a move with Lieutenant Bowers. He allegedly did not obtain mental health treatment for Mr.

Baltas or order "feed back" status. *Id.* ¶¶ 56-60. Mr. Baltas alleges that Warden Martin and Lieutenant Bowers intended to exacerbate Mr. Baltas' conditions so he would engage in behavior that could be used to remove him from Corrigan. *Id.* ¶ 62.

On October 6, 2022, Lieutenant Bowers and Officer Francis allegedly toured the housing unit. Mr. Baltas allegedly overheard Lieutenant Bowers tell Officer Francis to harass Mr. Baltas and manipulate him to engage in misconduct so Mr. Baltas could be removed from Corrigan. *Id.* ¶¶ 65-66. When Mr. Baltas allegedly asked Lieutenant Bowers about moving to one of the empty cells on the top tier, Lieutenant Bowers allegedly said she did not make convenience moves. Mr. Baltas allegedly tried to explain that the move was not for convenience but was necessary because he could not live in the current cell. However, Lieutenant Bowers allegedly stated that Mr. Baltas would "just have to suffer like he deserves, or he could refuse housing and go to seg where he belongs." *Id.* ¶ 67. Lieutenant Bowers also allegedly told Mr. Baltas that "they didn't want him there" because he was a "paper pushing pain in the ass." *Id.* ¶¶ 67-68. Mr. Baltas allegedly threatened to file a lawsuit against Lieutenant Bowers about her failure to preserve evidence. *Id.* ¶ 72.

Lieutenant Bowers allegedly followed Mr. Baltas back to his cell and began speaking to him so he was standing in the doorway and could not enter the cell. Lieutenant Bowers allegedly was angry at Mr. Baltas' threat of litigation and slammed the cell door against Mr. Baltas' body. When he allegedly told her not to assault him again, Lieutenant Bowers again allegedly tried to slam the door, but Mr. Baltas held onto the door and prevented her from doing so. *Id.* ¶¶ 74-75.

The alleged attempted assault triggered panic and anxiety attacks and caused Mr. Baltas to experience flashbacks of prior incidents with correctional staff. He allegedly entered the cell and Lieutenant Bowers allegedly slammed the door. *Id.* ¶ 76. Mr. Baltas allegedly was in a manic

state and could not control his anxiety. He allegedly believed that Lieutenant Bowers would fabricate an incident to have him placed in segregation and that, on the way to segregation, staff would allege that Mr. Baltas was trying to pull away from the escorting officers and assault him. *Id.* ¶ 77.

Defendants Bowers and Francis allegedly issued Mr. Baltas a false disciplinary report for flagrant disobedience. *Id.* ¶ 79. Lieutenant Bowers allegedly ordered all inmates to return to their cells and called for staff to remove Mr. Baltas from the unit and take him to restrictive housing. *Id.* ¶ 82. Officers Doe 1-4 allegedly responded to the unit. *Id.* ¶ 83. Officer Paradise allegedly recorded the incident on a hand-held video camera.  *Id.* ¶ 83.

When the Officers Doe allegedly arrived at his cell, Mr. Baltas allegedly was in a manic state and feared for his safety. He allegedly lost impulse control and, when Lieutenant Bowers allegedly opened the cell door, Mr. Baltas allegedly ripped a metal bar from the wall and confronted staff. *Id.* ¶ 85. A Code Orange allegedly was called to summon emergency response personnel. *Id.* ¶ 86.

Lieutenant Bowers allegedly deployed a chemical agent into Mr. Baltas' face, eyes, and mouth. Officers Doe 1-4 allegedly pinned Mr. Baltas face-down on the ground, applied handcuffs behind his back and shackles, and remained on top of him holding him down. Mr. Baltas allegedly was subdued and not engaging in any threatening behavior. *Id.* ¶¶ 87–89. After about twenty minutes, Officer Doe 5 allegedly arrived with the response team and began brutally beating Mr. Baltas. He allegedly punched Mr. Baltas in the face and head multiple times and kicked him in the face and head while screaming vulgarities at Mr. Baltas. *Id.* ¶¶ 90–92. Mr. Baltas allegedly lost consciousness during the assault. *Id.* ¶ 93. Officers Doe 1 and 2 allegedly continued to hold Mr. Baltas' upper torso down while striking and choking him and wrenching

the restraints. Officers Doe 3 and 4 allegedly struck his legs and wrenched the shackles causing

cuts to Mr. Baltas' achilles tendon. During the alleged assault, Lieutenant Bowers allegedly

continued to deploy the chemical agent.  *Id.* ¶¶ 94–97.

Following the alleged assault, Mr. Baltas allegedly was unable to walk. *Id.* ¶ 101.

Officers Doe 1 and 2 allegedly placed a safety veil, which is intended to be used only when an

inmate spits at correctional staff and was not warranted here, over Mr. Baltas' face, locking in

the chemical agent and impeded his breathing. *Id.* ¶¶ 102–03. Mr. Baltas allegedly was taken to

the medical unit by wheelchair where his eyes were decontaminated, and he was briefly assessed

by medical staff. *Id.* ¶ 105. Mr. Baltas allegedly requested further decontamination, but the

request was denied. *Id.* ¶ 106.

Mr. Baltas allegedly was escorted to restrictive housing and subjected to a controlled strip

search by Officers Doe 1 and 3. The officers allegedly removed Mr. Baltas' clothing and

manipulated his extremities while wearing gloves that were covered with chemical agent,

thereby spreading the chemical agent over his clothes and body. Lieutenant Bowers and Officers

Doe 1-4 allegedly denied all requests for further decontamination and clean clothing. *Id.* ¶¶ 107–

08.

Mr. Baltas allegedly suffered "a loss of consciousness, a concussion, several skeletal

fractures to his eye and cheek bone, a broken nose, as well as fracture to his ankle and breach of

his achilles tendon" as well as multiple contusions, abrasions, bruises, and swelling. *Id.* ¶ 113.

He allegedly has lost peripheral vision in his left eye and his nose healed improperly closing his

nasal passage and causing difficult and strained breathing. *Id.* ¶ 116. Mr. Baltas allegedly

suffered exacerbation of his mental illness and severe pain, including headaches, migraines, and

loss of memory, for three months. *Id.* ¶¶ 114–15. The alleged lack of proper decontamination

allegedly caused Mr. Baltas to experience sever pain for twenty-four hours and chemical burns to his face, head, arms, legs, neck, back, and chest. *Id.* ¶ 118.

A doctor at Corrigan allegedly assessed Mr. Baltas' injuries. The doctor allegedly ordered x-rays, an MRI, and pain medication but nothing was provided. *Id.* ¶¶ 119–120. Several hours later, Mr. Baltas allegedly was transferred from Corrigan to Walker Correctional Institution ("Walker"), pending Administrative Segregation placement. *Id.* ¶ 121.

Lieutenant Briatico allegedly supervised Mr. Baltas' intake at Walker. RN Dave and LPN Jerikah allegedly conducted a cursory medical intake in a hallway. Although Mr. Baltas allegedly reported his pain and injuries to all three defendants, RN Dave and LPN Jerikah allegedly refused to assess his injuries, and completed reports falsely stating that Mr. Baltas had no medical needs and reported no injuries. *Id.* ¶¶ 124–26. They also allegedly did not provide decontamination or clean clothing. *Id.* ¶ 127.

Mr. Baltas allegedly was secured in a restrictive housing cell without hygiene products or necessities. After the camera had been turned off, Lieutenant Briatico allegedly told Mr. Baltas that he "hopes it hurts" and that RN Dave and LPN Jerikah allegedly had been instructed that Mr. Baltas receive no medical treatment because he had assaulted staff. Lieutenant Briatico also allegedly ordered staff not to permit Mr. Baltas to shower and decontaminate himself. *Id.* ¶¶ 130–32. As a result of the alleged actions of these three defendants, Mr. Baltas allegedly experienced an additional eight to twelve hours of severe pain and burning from the chemical agent. *Id.* ¶ 134.

On October 7, 2022, Mr. Baltas allegedly spoke with Warden Dougherty and Deputy Warden Doran when they toured the unit. Mr. Baltas allegedly told them of his injuries and of the alleged refusal of treatment. When Mr. Baltas allegedly requested medical treatment, Warden

Dougherty and Deputy Warden Doran allegedly said they would not provide any medical treatment because Mr. Baltas had "got[ten] what [he] deserved for assaulting Corrigan staff." *Id.* ¶¶ 135–37. They allegedly told Mr. Baltas not to bother submitting requests to the medical unit because APRN Schauer and Dr. Lupis had been told to provide no medical treatment. *Id.* ¶ 138. Mr. Baltas allegedly did file medical requests and grievances but received no response. *Id.* ¶¶ 140, 142–43.

About four to six weeks after the alleged incident, Mr. Baltas allegedly received the x-rays ordered at Corrigan. *Id.* ¶ 144. Mr. Baltas allegedly believes that Warden Dougherty, Deputy Warden Doran, as well as Schauer, and Lupis, agreed to delay the x-rays until the investigation into Mr. Baltas' assault had concluded so they could file reports downplaying his injuries. *Id.* ¶ 146.

When Mr. Baltas allegedly was taken to Dr. Lupis' office to discuss the x-ray results, Dr. Lupis allegedly refused to tell him the results and denied examination and treatment. Dr. Lupis allegedly told Mr. Baltas that he had been brought to the medical unit so the visit could be recorded but he would receive no medical treatment as long as Dr. Lupis was the provider. Dr. Lupis allegedly then falsified the records to indicate that Mr. Baltas had been refusing treatment for several months. *Id.* ¶¶ 147–50.

On November 10, 2022, Mr. Baltas allegedly attended a disciplinary hearing on the charge of flagrant disobedience. He was found not guilty.  *Id.* ¶ 152.

## II.   <u>DISCUSSION</u>

Mr. Baltas asserts ten causes of action: (1)  a failure to preserve evidence, or for destroying  evidence claim against Lieutenant Bowers, allegedly in violation of the First and Fourteenth Amendments of the United States Constitution, state and federal Freedom of

Information laws, Article first, sections 1, 4, 7, 8, 9, 10, 14, and 20 of the Connecticut

Constitution, and 18 U.S.C. §§ 241, 242, 271, and 1519; (2) a retaliation claim against

Lieutenant Bowers and  Officer Francis, allegedly in violation of the First, Eighth, and

Fourteenth Amendments of the United States Constitution, Article first, sections 1, 4, 7, 8, 9, 10,

14, and 20 of the Connecticut Constitution, and 18 U.S.C. §§ 241, 242, 371, and 1519; (3) an

excessive force claim against Lieutenant Bowers, Officer Francis, and Officer Does 1-5,

allegedly in violation of the Eighth Amendment of the United States Constitution, Article first,

sections §§ 7, 8, 9, and 10 of the Connecticut Constitution, and 18 U.S.C. §§ 241 and 242; (4) an

assault and battery claim against Lieutenant Bowers, Officer Francis, and Officer Does 1-5,

allegedly in violation of the Eighth Amendment of the United States Constitution and Article

first, §§ 7, 8, 9, and 10 of the Connecticut Constitution; (5) a deliberate indifference claim

against Lieutenant Bowers and Warden Robert Martin, allegedly in violation of the Eighth and

Fourteenth Amendments of the United States Constitution, Connecticut General Statutes § 18-

96b(g), and 18 U.S.C. §§ 241, 242, 371, and 1519; (6) a deliberate indifference claim against

Lieutenant Briatico, RN Dave, and LPN Jerikah, allegedly in violation of the Eighth Amendment

of the United States Constitution, Article first, sections 7, 8, 9, 10, 14, and 20 of the Connecticut

Constitution, and 18 U.S.C. §§ 241, 242, 371, and 1519; (7) a deliberate indifference claim

against RN Dave, LPN Jerikah, Deputy Warden Doran, Warden Dougherty, APRN Schauer, and

Dr. Lupis, allegedly in violation of the Eighth Amendment of the United States Constitution,

Article first, sections 1, 4, 7, 8, 9, 10, 14, and 20 of the Connecticut Constitution, and 18 U.S.C.

§§ 241, 242, 271, and 1519; (8) conspiracy claims against a number of Defendants, allegedly in

violation of the First, Eighth, and Fourteenth Amendments of the United States Constitution,

Article first, sections 1, 4, 7, 8, 9, 10, 14, and 20 of the Connecticut Constitution, and 18 U.S.C.

§§ 241, 242, 271, and 1519; (9) a deliberate indifference claim against Lieutenant Bowers, Officer Francis, and Officer Does 1-5, allegedly in violation of the Eighth Amendment; and (10) a liberal construction of his pleadings.

The tenth cause of action is merely a statement of the law regarding review of pleadings filed by self-represented litigants.  As a result, it is not a viable claim for relief.

Accordingly, this tenth cause of action will be dismissed.

### A.      The Claims under 42 U.S.C. §§ 1981, 1985, 1986, 1988

In addition to 42 U.S.C. § 1983, Mr. Baltas states that he brings this action under 42 U.S.C. §§ 1981, 1985, 1986, and 1988.  Mr. Baltas cannot, however, state a cognizable claim under any of these sections.

To state a claim under section 1981, Mr. Baltas must allege that he is a member of a racial minority and was subjected to racial discrimination concerning at least one of the activities enumerated in the statute, *i.e.*, that he was prevented from making and enforcing contracts, suing and being sued, or giving evidence.  *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).  Mr. Baltas does not allege interference with any enumerated activity and does not assert a claim for racial discrimination. Thus, he cannot state a cognizable section 1981 claim.

"Section 1985 prohibits conspiracies." *Harnage v. Dzurenda*, No. 3:14-CV-885 SRU, 2014 WL 3360342, at *2 (D. Conn. July 9, 2014). Section 1985(1) prohibits conspiracies to prevent federal officers from performing their duties. *Id.* Section 1985(2) prohibits conspiracies intended to deter witnesses from participating in state or federal judicial proceedings. *Id.* Neither section is applicable to the facts Mr. Baltas alleges.

Section 1985(3) prohibits conspiracies motivated by racial or otherwise class-based

invidious discriminatory animus. *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (explaining under § 1985(3), "the conspiracy must be motivated by some class-based animus"). Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of any constitutional right. *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971) ("That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others."). As Mr. Baltas fails to allege any facts supporting a racial or class-based conspiracy, he cannot state a cognizable section 1985(3) claim.

Section 1986 provides no substantive rights; it merely provides a remedy for the violation of section 1985. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 222 n.28 (1970) (explaining that § 1986 is meant to provide "remedy against individuals who share responsibility for conspiratorial wrongs under § 1985 by failing to make reasonable use of their power to prevent the perpetration of such wrongs") (Brennan, J., concurring in part and dissenting in part). Thus, a prerequisite for an actionable section 1986 claim is a cognizable section 1985 claim. *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (explaining that "a § 1986 claim must be predicated on a valid § 1985 claim"), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) (internal quotations marks and citation omitted). As Mr. Baltas has not stated a cognizable section 1985 claim, he cannot state a cognizable section 1986 claim.

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil rights cases in conformity with federal law where appropriate or state law. This section does not provide an independent cause of action. *See Moor v. Alameda Cty*., 411 U.S. 693, 702-06 (1973) ("[W]e do not believe that [§ 1988], without more, was meant to authorize the wholesale

importation into federal law of state causes of action—not even one purportedly designed for the protection of federal civil rights."). Section 1988(b) provides for award of attorney's fees. As a *pro se* litigant, Mr. Baltas is not entitled to attorney's fees under section 1988. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (holding that "a *pro se* litigant who is not a lawyer is not entitled to attorney's fees"); *see also Sosa v. Lantz*, 660 F. Supp. 2d 283, 289 (D. Conn. 2009) (same).

Thus, Mr. Baltas cannot state a cognizable claim under any of these statutes.

Accordingly, any claims asserted under 42 U.S.C. §§ 1981, 1985, 1986, and 1988 will be dismissed under 28 U.S.C. § 1915A(b)(1).

### B.  The Claims Under Federal Criminal Statutes

Mr. Baltas asserts violations of several federal criminal statutes, namely 18 U.S.C. §§ 241 (conspiracy against rights), 242 (deprivation of rights under color of law), 371 (conspiracy to commit offense or defraud the United States), and 1519 (destruction, alteration, or falsification of records). He also cites 18 U.S.C. § 271, a provision that does not exist. Although Mr. Baltas has previously been informed that violations of these federal criminal statutes cannot state plausible claims for relief, *Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *7 (D. Conn. Apr. 27, 2022) ("These statutes . . . are federal criminal statutes that do not provide a private right of action."), he persists in asserting claims under these same statutes.

Federal criminal statutes do not provide a private right of action. *See Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order) ("To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242, these claims are not cognizable, as federal criminal statutes do not provide private caused of action."); *see also Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (no private right of action under 18 U.S.C. §§ 241, 242); *Hom v. Brennan*, 840 F. Supp. 2d 576, 582

(E.D.N.Y. 2011) (criminal conspiracy under 18 U.S.C. § 371 does not provide a private cause of

action); *Hardy-Graham v. Southampton Just. Ct.*, No. 20-CV-0981(JS)(SIL), 2021 WL 260102,

at *3 (E.D.N.Y. Jan. 25, 2021) (18 U.S.C. § 1519 does not provide a private cause of action)

(citing *Kalola v. International Bus. Machines Corp.*, No. 19-CV-9900, 2019 WL 6879307, at *3

(S.D.N.Y. Dec. 16, 2019)).

      Accordingly, all claims for violation of federal criminal statutes will be dismissed under

28 U.S.C. § 1915A(b)(1).

      **C.**    **The Conspiracy Claims**

      In his first and eighth causes of action, Mr. Baltas alleges that various Defendants

conspired among themselves or with other correctional staff. All defendants in this action are, or

were, correctional employees and Mr. Baltas alleges in his preliminary statement and description

of the parties that all Defendants were acting under color of state law. *See* ECF No. 1 ¶¶ 3, 25.

      The intracorporate conspiracy doctrine provides that officers, employees, and agents of a

single corporate entity are legally incapable of conspiring together. *See Hartline v. Gallo*, 546

F.3d 95, 99 n.3 (2d Cir. 2008).  Although the Second Circuit has not yet applied the doctrine in

Section 1983 cases, district courts within the Second Circuit have done so. *See Baltas v. Dones,*

2022 WL 1239989, at *7 (dismissing conspiracy claims under intracorporate conspiracy

doctrine); *Vega v. Artus*, 610 F. Supp. 2d 185, 205-06 (N.D.N.Y. 2009) (dismissing conspiracy

claim under intracorporate conspiracy doctrine where all defendants were correctional employees

acting within the scope of their employment); *see also Williams v. Korines*, No. 9:16-CV-

1157(FJS/TWD), 2018 WL 4521204, at *5 n.1 (N.D.N.Y. Sept. 21, 2018) (concluding that

intracorporate conspiracy doctrine applied to an inmate's Section 1983 conspiracy claim).

There is an exception to the intracorporate conspiracy doctrine when individuals are "pursuing

personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted).

Simple allegations that the defendants were motivated by personal bias, however, are insufficient to support the exception. *See Vega*, 610 F. Supp. 2d at 205 (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interest wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine" more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against plaintiff"). Conduct meeting the exception must show officers working against, not for departmental interests. *See, e.g., Mazyck v. Keller*, 531 F. Supp. 3d 630, 647 (W.D.N.Y. 2021) (finding sufficient allegations to invoke exception where plaintiff alleged that defendants fabricated evidence to cover up actions of a third defendant and those actions were not related to corporate policy or management decisions); *Brown v. Annucci*, No. 19 CV 9048 (VB), 2021 WL 860189, at *10-11 (S.D.N.Y. Mar. 8, 2021) (defendants "us[ed] excessive force and then agree[d] to cover up the alleged assault by manipulating or destroying evidence"). As Mr. Baltas alleges no facts suggesting that defendants were acting against departmental interests, the intracorporate conspiracy doctrine bars this claim.

Accordingly, all conspiracy claims will be dismissed under 28 U.S.C. § 1915A(b)(1).

### D.    THE FAILURE TO PRESERVE EVIDENCE CLAIM

In his first cause of action, Mr. Baltas contends that Lieutenant Bowers failed to preserve or destroyed evidence that he required to pursue claims in other cases. He alleges generally that her actions violated his rights under the First and Fourteenth Amendments of the United States Constitution and state and federal Freedom of Information laws.

"While a party to an action in federal court may bring a motion for sanctions for

15

spoliation against another party in that action, there is no independent federal cause of action for spoliation." *Andrews v. City of New York*, No. 23-CV-2411(LTS), 2023 WL 3724978, at *5 (S.D.N.Y. May 30, 2023) (collecting cases). In addition, the federal Freedom of Information Act ("FOIA"), does not apply to state entities. *See* 5 U.S.C. § 551(1) (the federal FOIA applies only to federal agencies). Mr. Baltas' recourse is to file a motion seeking sanctions for spoliation of evidence in his other cases. He cannot assert a federal spoliation or FOIA claim here.

To the extent that Mr. Baltas seeks to assert supplemental state law claims for FOIA violations, his claims are not cognizable. As relief in this case, Mr. Baltas seeks damages and injunctive relief in the form of a review of falsification of records. All Defendants, however, are named in their individual capacities only. In that capacity, Defendants lack authority to provide injunctive relief. *See Torres v. Connection, Inc.*, No. 3:22CV00883 (SALM), 2023 WL 2477502, at *1 (D. Conn. Mar. 13, 2023); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) (citing cases). Thus, the only available relief is damages which cannot be awarded on a state FOIA claim. *See Baltas v. Rivera*, No. 3:19-cv-1043 (MPS), 2019 WL 3944435, at *9 (D. Conn. Aug. 21, 2019) (citing *Pane v. Danbury*, 267 Conn. 669, 678-80 (2004)). The state FOIA claim is dismissed, and Mr. Baltas can pursue this claim in state court.

Finally, to state a state law claim for intentional spoliation, Mr. Baltas must allege "(1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." *Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 264-65 (D. Conn. 2022) (quoting *Traylor v. Hammond*, 94 F. Supp. 3d 203, 222 (D. Conn. 2015) (citing *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225, 244-45, 905 A.2d 1165 (2006)))

(internal quotation marks omitted). Mr. Baltas also must allege facts showing that the evidence that was destroyed was "vital" to his ability to prevail on his claims, and he must allege with specificity which claim might have been litigated but for the spoliation of evidence. *Id.*

Mr. Baltas fails to allege facts meeting the fourth and fifth elements and the additional requirements. The cases for which he allegedly required the destroyed evidence remain pending. Thus, he cannot show that he was unable to establish a prima facie case or that he suffered damages. Also, he has not identified any claims with specificity or shown that the destroyed evidence was vital to any of his claims in those cases. Any state law claim for spoliation of evidence is dismissed as prematurely filed.

Furthermore, the Court may exercise supplemental jurisdiction over a state law claim if "(1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact." *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds, Graham v. Connor*, 490 U.S. 386 (1989). Here, Mr. Baltas' state claims regarding spoliation of evidence are unrelated to his federal claims for use of excessive force, deliberate indifference to medical needs, and retaliation. Thus, even if the claims were properly alleged, the Court would decline to exercise supplemental jurisdiction over them.

Accordingly, any independent claims for the failure to preserve or for destroying evidence will be dismissed.

### E.      THE RETALIATION CLAIMS

To state a First Amendment retaliation claim, Mr. Baltas must show "(1) that the speech

or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). Mr. Baltas may not rest on "wholly conclusory: allegations but must allege "specific and detailed" supporting facts. *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).

Protected speech or activity includes, for example, "filing a lawsuit, an administrative complaint, or a prison grievance." *Stewart v. Ayala*, No. 3:20-CV-1938 (CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022). "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).

Mr. Baltas alleges that Defendants Bowers and Francis issued a false disciplinary report to get him transferred to restrictive housing conditions because he files numerous lawsuits and grievances. Thus, he satisfies the first two requirements.

"With regard to false misbehavior reports, the type[s] of evidence required to establish a causal connection between the plaintiff's protected conduct and the alleged retaliation include temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing and statements from the defendants regarding their motives." *Jones v. Rodi*, No. 3:19-CV-1866 (VAB), 2023 WL 2456703, at *6 (D. Conn. Mar. 10, 2023) (quoting *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 414 (D. Conn. 2016) (alteration in original), *aff'd*, 720 F. App'x 79 (2d Cir. 2018)) (internal quotation marks omitted).

Mr. Baltas alleges that Lieutenant Bowers instructed Officer Francis to harass him because "they wanted to get him out of here." ECF No. 1 ¶ 66. Shortly thereafter, Lieutenant

Bowers told Mr. Baltas that they did not "want him there" because he was a "paper pushing pain in the ass," which Mr. Baltas infers refers to his filing of grievances and lawsuits. Mr. Baltas received the disciplinary report a few moments after he allegedly angered Lieutenant Bowers by questioning her about destroying evidence he needed for other cases. Several weeks later, Mr. Baltas allegedly was found not guilty of the disciplinary charge.

Accordingly, based on the not guilty finding and the alleged statements from Lieutenant Bowers, the Court concludes that Mr. Baltas has stated a plausible retaliation claim against defendants Bowers and Francis, and this claim will proceed for now.

### F.    THE EXCESSSIVE FORCE CLAIMS

When an inmate alleges that excessive force was used by a correctional officer, the issue is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force also is "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)). Nor is the extent of the inmate's injuries as a result of the defendant's conduct the critical issue in determining the objective component. *See Wilkins*, 559 U.S. at 37 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury was sustained). A court considers several factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and

any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks and citation omitted). Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to prevent the use of excessive force by another officer when they are in a position to observe the conduct and have time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).

In his third and fourth causes of action, Mr. Baltas asserts federal claims for use of excessive force and state law claims for assault and battery against defendants Bowers and Does 1-5. Although Baltas alleges that the use of force was precipitated by his ripping a metal bar from the wall of his cell and using it as a weapon, the force allegedly continued after he has been subdued and handcuffed. The alleged continuation of the use of force is sufficient to state a plausible claim.

Accordingly, Mr. Baltas' excessive force claims will proceed for now.

Baltas also asserts state law claims for assault and battery. Under Connecticut law, "liability for battery arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . and (b) a harmful contact with the person of the other directly or indirectly results." *Simms v. Chaisson,* 277 Conn. 319, 331 (2006) (citing Restatement (Second), Torts § 13 (1965)). "Liability for assault arises if (a) a person acts intending to cause a harmful or offensive contact with the person of the other . . . and (b) the other is thereby put in such imminent apprehension." *Id.* To "constitute an actionable assault and battery there must have been an unlawful force applied to one person by another." *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972) (internal quotation marks omitted).

Accordingly, Mr. Baltas has plausibly alleged the elements of assault and battery against defendants Bowers and Officer Does 1-5, and those claims will proceed for now.

### G.     THE DELIBERATE INDIFFERENCE CLAIMS

The Eighth Amendment prohibits not only "deliberate indifference to serious medical needs of prisoners," but also deliberate indifference to serious "mental health care" needs. *Spavone v. New York State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A claim for deliberate indifference to medical or mental health needs is comprised of objective and subjective elements. Objectively, the plaintiff must allege a "sufficiently serious" medical or mental health condition. *Spavone,* 719 F.3d at 138 (citations omitted). To determine whether a condition is "serious," courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Id.* at 703. This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

In the fifth cause of action, Mr. Baltas alleges that defendants Bowers and Martin were deliberately indifferent to his mental health needs. In the sixth and seventh causes of action, Mr. Baltas alleges that defendants Briatico, Dave, Jerikah, Doran, Dougherty, Schauer, and Lupis

were deliberately indifferent to his medical needs.

Mr. Baltas alleges that he has been diagnosed with several mental health disorders including antisocial personality disorder, borderline personality disorder, general anxiety disorder, panic disorder, cognitive disorder, dysthymic disorder, major depressive disorder, and post-traumatic stress disorder. In addition, he allegedly is hypersensitive to loud noises and social interactions and suffers severe anxiety, panic attacks, aggressive behavior, suicidal and homicidal ideations, and a complete lack of impulse control when subjected to these conditions. As a result of the alleged use of force, Mr. Baltas allegedly suffered a concussion, fractures to his eye and cheek bone, a broken nose, a fractured ankle, and injury to his achilles tendon. He allegedly has lost peripheral vision in his left eye and his nose healed improperly closing his nasal passage and causing him difficult and strained breathing. The alleged prolonged exposure to the chemical agent without decontamination allegedly resulted in severe pain and chemical burns to his face, head, arms, legs, neck, back, and  chest.

Accordingly, Mr. Baltas has plausibly alleged serious medical and mental health needs.

Subjectively, Mr. Baltas alleges that the Defendants named in this claim denied him all medical and mental health treatment. When Mr. Baltas described his conditions and need for medical or mental health treatment, Defendants allegedly specifically told Mr. Baltas that he would receive no medical or mental health care. In addition, they allegedly intentionally delayed any decontamination for twenty-four hours. These allegations are sufficient on initial review to plausibly state claims for deliberate indifference to medical or mental health needs. *See El-Massri v. New Haven Correctional Center*, No. 3:18-cv-1249 (CSH), 2018 WL 4604308, at *9 (D. Conn. Sept. 25, 2018) (allegation that officers sprayed plaintiff with chemical agent causing plaintiff's eyes and skin to burn and denied his requests for decontamination sufficient

plausibly alleges deliberate indifference to medical needs); *Ferla v. Correctional Managed Health Care*, No. 3:15-cv-13-3 (MPS), 2015 WL 5826812, at *2 (D. Conn. Oct. 2, 2015) (distinguishing between denial of all treatment, which is cognizable as a deliberate indifference to medical needs claim, and dispute over treatment provided, which is not).

Accordingly, Mr. Baltas' claims for deliberate indifference to medical and mental health needs will proceed for further development of the record.

### H.    THE STATE LAW CLAIMS

In causes of action 1, 2, 3, 4, 6, 7, and 8, Mr. Baltas alleges the defendants violated his rights under various provisions of the Connecticut Constitution. He specifically refers to Article first, sections 1, 4, 7, 8, 9, 10, 14, and 20. Mr. Baltas also alleges violations of the state torts of assault and battery and Connecticut General Statutes § 18-96b(g). The Court has determined above that the state torts of assault and battery will proceed with Mr. Baltas' claim for use of excessive force.

The Connecticut Supreme Court has recognized a cause of action for money damages under Article first, sections 7 and 9 of the Connecticut Constitution where the claims arose from unreasonable searches and seizures and unlawful arrest by police officers. *Binette v. Sabo*, 244 Conn. 23, 47–49 (1998). In recognizing these claims, however, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. Although recognizing a cause of action under these provisions, the Connecticut Supreme Court has never extended the cause of action under sections 7 and 9 to cases filed by prisoners. Therefore, the Court declined to exercise supplemental jurisdiction over Mr. Baltas' claims asserted under Article first, sections 7 and 9 of the Connecticut Constitution. *See Baltas v.*

*Dones*, No. 3:22-cv-38 (MPS), 2022 WL 1239989, at *20 (D. Conn. Apr. 27, 2022) (declining to

exercise supplemental jurisdiction over Mr. Baltas' claims under Article first, sections 7 and 9)

(citing cases).

In addition, courts routinely decline to recognize a private right of action under Article

first, sections, 1, 4, 8, 10, 14, and 20 of the Connecticut Constitution. *See id.* at *21 (citing

cases).

Accordingly, the Court will not exercise supplemental jurisdiction over Mr. Baltas'

claims under Article first, sections 1, 4, 8, 10, 14, and 20 of the Connecticut Constitution. *See* 28

U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over

a claim" raising "a novel or complex issue of State law").

Connecticut General Statutes § 18-96b, entitled "Restrictive housing status and isolated

confinement for incarcerated persons," is a relatively new statute. There is only one reported trial

level case dealing with a different subsection of the statute than the subsection Mr. Baltas cites.

As the state court has not had an opportunity to consider claims under this provision, the Court

declines to exercise supplemental jurisdiction over this claim.[2]

## I.      Motions for Prejudgment Remedy

Federal Rule of Civil Procedure 64(a) provides that "[a]t the commencement of and

throughout an action, every remedy is available that, under the law of the state where the court is

located, provides for seizing a person or property to secure satisfaction of the potential

judgment." The procedure for obtaining a prejudgment remedy is governed by state law. *See*

---

[2] Mr. Baltas cites subsection (g) of the statute. This subsection provides that "[t]he department shall not impose a lockdown upon an entire correctional facility or part of a correctional facility for purposes of training department staff for more than twenty-four cumulative hours during any thirty-day period." Mr. Baltas does not include any claim regarding a facility lockdown for training purposes. Thus, even if cognizable, Mr. Baltas does not state a claim under 18-96b(g).

*Bahrain Telecomm. Co. v. DiscoveryTel, Inc.*, 476 F. Supp. 2d 176, 183 (D. Conn. 2007); *see also Everspeed Enterprises Ltd. v. Skaarup Shipping Int'l.*, 754 F. Supp. 2d 395, 401 (D. Conn. 2010) ("Rule 64 of the Federal Rules of Civil Procedure permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action.").

"Under Connecticut law, a prejudgment remedy is appropriate if the court, 'upon consideration of the facts before it and taking into account any defenses, counterclaims or setoffs . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought[.]'" *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (quoting Conn. Gen. Stat. § 52-278d(a)). "To prevail on a motion for prejudgment remedy, a plaintiff is 'bound to furnish proof of his damage with reasonable probability, and not leave the trial court to speculation and conjecture.'" *N. Jonas and Co. v. Brothers Pool Enterprises, Inc*., No. 3:22 CV 1097 (JBA), 2022 WL 16630863, at *2 (D. Conn. Nov. 2, 2022) (quoting *Mullai v. Mullai*, 1 Conn. App. 93, 468 A.2d 1240, 1242 (1983) (per curiam)). Thus, a court considers both the validity of the plaintiff's claim and the amount sought.  *Id.* (citation omitted).

By separate motions, Mr. Baltas seeks a prejudgment remedy against defendants Bowers and Does 1-5. In the complaint he seeks a prejudgment remedy against all defendants. Mr. Baltas also has filed a motion seeking disclosure of assets by all defendants. Mr. Baltas seeks a prejudgment remedy in the amount of $100,000 for each defendant. While the Court has determined that Mr. Baltas has alleged sufficient facts to state a plausible claim for relief, Court cannot determine at this time the likelihood that Mr. Baltas will prevail and, even if he does, that judgment will enter in this amount.

Accordingly, the motions for prejudgment remedy and disclosure of assets will be denied.

**J.      Motion for Limited Early Discovery**

Finally, Mr. Baltas has filed a motion seeking limited early discovery to enable him to get copies of the incident report, video footage of the incident, and a staff roster to enable him to ascertain the identities of the John Doe officers.

After the Court completes its initial review and determines that a case should proceed, it issues the Standing Order Re: Initial Discovery Disclosures. This order requires Defendants to provide copies of incident reports relating to the claims in the complaint and a list of witnesses believed to have relevant information regarding the claims in the complaint. This requirement should address the discovery issues raised in this motion by Mr. Baltas

Accordingly, the motion for early discovery will be denied.

## CONCLUSION

All conspiracy claims, all claims for violation of 18 U.S.C. §§ 241, 242, 271, 371, and 1519; all claims under 42 U.S.C. §§ 1981, 1985, 1986, and 1988; all federal claims for spoliation or destruction of evidence and violation of the federal FOIA; and the state law claims for violation of the Connecticut FOIA and intentional spoliation of evidence are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Court declines to exercise supplemental jurisdiction over Mr. Baltas' claims for violation of Article first, sections 1, 4, 7, 8, 9, 10, 14, and 20 of the Connecticut Constitution, and his state law claims for violation of Conn. Gen. Stat. § 18-96b(g).

The case will proceed on the First Amendment retaliation claim against Defendants Bowers and Francis, the Eighth Amendment claim for use of excessive force against Defendants Bowers and Officer Does 1-5, the Eighth Amendment claim for deliberate indifference to

medical and mental health needs against Defendants Bowers, Martin, Briatico, Dave, Jerikah, Doran, Dougherty, Schauer, and Lupis, and the state law claims for assault and battery against Defendants Bowers and Officer Does 1-5.

Mr. Baltas' motions seeking prejudgment remedy [**ECF Nos. 4, 5**] and limited early discovery [**ECF No. 11**] are **DENIED**.

The Court enters the following additional orders.

(1)    **The Clerk of Court shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for defendants Bowers, Francis, Martin, Briatico, Dave, Jerikah, Doran, Dougherty, Schauer, and Lupis, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address by **August 25, 2023**, and report to the Court on the status of the waiver request by **September 1, 2023**. If any Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on Defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)    **The Clerk of Court shall** send Plaintiff a copy of this Order.

(3)    **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)    Defendants shall file their response to the complaint, either an Answer or motion to dismiss, by **November 3, 2023**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **April 5, 2023**. Discovery requests need not be filed with the court.

(6)      All motions for summary judgment shall be filed by **June 7, 2023**.

(7)      Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)      If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9)      Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10)      The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

(11)      The Court cannot effect service on Officers Doe 1-5 without their full names and current work or service addresses. Plaintiff is directed to obtain this information through discovery and file a notice containing the information. Once the notice has been filed, the Court will order service on Officers Doe 1-5.

28

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of July, 2023.


   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge